UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DBD FRANCHISING , INC. and DINNER ) <br> BY DESIGN, INC. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SHARYN M. DeLAURENTIS, ) <br> ) <br> Defendant. ) | No. 09 C 669 <br><br> Judge Marvin E. Aspen |

## MEMORANDUM OPINION AND ORDER

Plaintiffs DbD Franchising, Inc., a Wisconsin corporation ("DbDFI - Wisconsin"), and Dinner by Design, Inc., also a Wisconsin corporation ("DbD - Wisconsin") (collectively, the "DbD Plaintiffs") filed a complaint for breach of contract against Defendant, Sharyn DeLaurentis, on February 2, 2009. Presently before us is the DbD Plaintiffs' motion for reassignment as related and DeLaurentis's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, we deny DeLaurentis's motion and grant the DbD Plaintiffs' motion.

### BACKGROUND[1]

In 2003, Julie Duffy incorporated Dinner by Design, Inc. in Illinois ("DbD - Illinois").

---

[1] We may consider matters outside the pleading when "resolving factual questions pertaining to jurisdiction." *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993); *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979) ("'The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"). Because we must determine whether we have subject matter jurisdiction to hear this case, the facts described are taken from both the complaint and additional filings.

-1-

(DbD Resp. to DeLaurentis's Mot. to Dismiss at 3 (hereinafter, "DbD Resp."), Ex. A, Julie Duffy Decl. ¶ 2.) DbD - Illinois provided ready-to-cook meals to its customers. (Compl. ¶ 1; DbD Resp. at 3.) At the time of its incorporation, Julie Duffy and her husband, Patrick Duffy, lived in Illinois. (DbD Resp. at 3.) In 2004, Julie Duffy incorporated DbD Franchising, Inc. as an Illinois corporation ("DbDFI - Illinois"), for the purpose of franchising the Dinner by Design concept (DbDFI - Illinois and DbD - Illinois are collectively referred to as the "Illinois companies"). (*Id.*) DbDFI - Illinois sold approximately 90 franchises over the next two years. (*Id.*) However, in 2006, the Duffys sold their business to DeLaurentis, pursuant to a written agreement ("Agreement"). (Compl. ¶ 1.) Although DeLaurentis purchased the Illinois companies' assets, Julie Duffy remained the sole shareholder of both Illinois companies, whose only asset appears to be their Agreement with DeLaurentis. (*See* DbD Resp. at 4; DeLaurentis Reply at 4.)

In February 2008, the Duffys moved to Sister Bay, Wisconsin. (DbD Resp. at 4.) The DbD Plaintiffs contend that when the Duffys moved to Wisconsin, the Illinois companies also moved. (*Id.*) The Illinois companies did not maintain an office in Illinois and all decisions related to the companies were made in Wisconsin. (*Id.*) On April 2, 2008, the Duffys voluntarily dissolved DbD - Illinois, but left the status of DbDFI - Illinois untouched. (*Id.* at 5.) Some time before November 2008, the Duffys discussed whether to transfer DbDFI - Illinois' state of incorporation to Wisconsin and decided to do so. (*Id.* at 4.) However, the Duffys did not actually complete the transfer of incorporation until January 8, 2009, when DbDFI - Illinois filed a Certificate of Conversion with the Wisconsin Department of Financial Institutions, which created DbDFI - Wisconsin. (*Id.* at 5, Ex. E.) Similarly, on January 7, 2009, Julie Duffy

incorporated a new corporation in Wisconsin, DbD - Wisconsin. (*Id.* at 6.) Simultaneously, Julie Duffy and the dissolved DbD - Illinois agreed to transfer their rights and obligations under the Agreement with DeLaurentis to DbD -Wisconsin. (*Id.*) The Duffys claim that they converted DbD - Illinois and incorporated DbD -Wisconsin because they moved to Wisconsin, their principal place of business was Wisconsin, and because they wanted the companies to enjoy the same benefit of diversity jurisdiction as they would receive in a suit against DeLaurentis. (*Id.* at 6; Patrick Duffy Decl. ¶¶ 20, 22.)

Meanwhile, on November 26, 2008 – after DbD - Illinois was dissolved, but before either DbDFI - Illinois was converted to DbDFI - Wisconsin or DbD -Wisconsin was incorporated – DeLaurentis filed a three-count complaint against the Duffys for fraud, violation of the Illinois Deceptive Business Practices Act ("IDBPA"), and rescission of contract, in the Circuit Court of Lake County, Illinois (the "*DeLaurentis* action"). (DeLaurentis Mem. in Support of Mot. to Dismiss at 2 (hereinafter, "DeLaurentis Mem.").) On January 9, 2009, the Duffys removed that case to the Northern District of Illinois. *See DeLaurentis v. Patrick & Julie Duffy*, No. 09 C 133 (N.D. Ill.). (DeLaurentis Mem. at 3; DbD Mot. for Reassignment ¶ 3 (hereinafter, "DbD Mot.").) The DbD Plaintiffs are not parties to that action, as DeLaurentis sued the Duffys individually. In their Rule 26(f) Report submitted on January 28, 2009, the parties in the *DeLaurentis* action consented to the jurisdiction of a United States magistrate judge and the case was reassigned to Magistrate Judge Mason. (Report of Rule 26(f) Planning Meeting, Dkt. No. 11, No. 09 C 133; 3/6/2009 Order, No. 09 C 133.) The DbD Plaintiffs filed the suit before us on February 2, 2009. In it, they allege that DeLaurentis breached the Agreement. (*Id.* ¶¶ 14-21.) On March 19, 2009, the DbD Plaintiffs filed a motion for reassignment as related, asking us to

reassign this case to Judge Mason. On March 31, 2009, DeLaurentis moved to dismiss the case for lack of subject matter jurisdiction.

## ANALYSIS

**I. DeLaurentis's Motion to Dismiss Pursuant to Rule 12(b)(1)**

Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide," and must be conferred upon the federal courts. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court may look beyond the complaint to pertinent evidence submitted by the parties. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). The plaintiff faced with a properly supported 12(b)(1) motion to dismiss bears the burden of proving that the jurisdictional requirements have been met. *See Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

Plaintiffs have asserted subject matter jurisdiction based on diversity of the parties. (Compl. ¶ 5.) Pursuant to 28 U.S.C. § 1332, the district courts have original jurisdiction over civil actions between citizens of different states in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). A corporation is deemed to be a citizen of both the state where it is incorporated and the state where it maintains its principal place of business, and citizenship is determined as of the date the lawsuit is filed.[2] *See* 28 U.S.C. § 1332(c)(1); *Aurora Loan Servs.,*

---

[2] Because we determine jurisdiction at the time the suit was filed, the pertinent question is whether the DbD Plaintiffs were properly citizens of Wisconsin on the date the suit was filed, not whether the parties to the underlying transactions were, at the time the transaction was entered into, citizens of Wisconsin. DeLaurentis apparently argues that because DbD - Illinois and DbDFI - Illinois were incorporated in Illinois when they executed the Agreement, they

*Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006); *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004). Additionally, 28 U.S.C. § 1359 provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. In her motion to dismiss, DeLaurentis argues that the Duffys converted DbDFI's state of incorporation to Wisconsin and transferred the dissolved DbD - Illinois' assets from Julie Duffy to the newly incorporated DbD - Wisconsin[3] in an attempt to manufacture diversity in

---

cannot subsequently change their state of corporation in a manner that would permit diversity jurisdiction. (*See* DeLaurentis Mem. at 6 (explaining that because "the Agreement clearly identifies the sellers as Illinois corporations" and that "[n]o Wisconsin corporations was a party to the Agreement . . . [,] [t]he allegations of diversity are a contrivance to invoke jurisdiction in this Court").) This argument is incorrect. As explained herein, we must make a factual determination of whether the change in corporate status was collusive. *See Herzog Contracting Corp. v. McGowen Corp.*, 976 F.3d 1062, 1066-67 (7th Cir. 1992).

[3] The DbD Plaintiffs argue that the assets of DbD - Illinois transferred to its sole shareholder, Julie Duffy, after it was dissolved. (DbD Resp. at 10 (citing *Dubey v. Abam Bldg. Corp.*, 266 Ill. App. 3d 44, 47, 639 N.E.2d 215, 218 (1st Dist. 1994) ("Whatever assets a dissolved corporation has belong to the former shareholders, subject to the rights of creditors.").) Thus, they argue that because Julie Duffy was a citizen of Wisconsin, even if the transfer of assets to DbD - Wisconsin is considered collusive under § 1359, diversity jurisdiction would still be proper because Julie Duffy would have been the proper plaintiff prior to the asset transfer. (DbD Resp. at 10.) DeLaurentis disagrees, contending that Julie Duffy could not assume ownership of the dissolved corporation's assets until the completion of the winding up process. (DeLaurentis Resp. at 7 (citing 805 ILCS 5/12.30(c)(1) ("Dissolution of a corporation does not: [t]ransfer title to the corporation's assets."); *Lasday v. Weiner*, 273 Ill. App. 3d 461, 466, 652 N.E.2d 1198, 1201 (1st Dist. 1995) ("All corporate formalities must be adhered to throughout the winding down process until the ultimate distribution of the proceeds of the sale to the shareholders. . . . To treat corporate funds as personal funds at this stage of the wind down ignores the superior rights of creditors, employees, and others who have claims against the corporation.").

We find this point immaterial. To the extent that Julie Duffy did not assume ownership over DbD - Illinois' assets because corporate formalities were not satisfied, both Julie Duffy and DbD - Illinois were parties to the sale of DbD - Illinois' assets to DbD - Wisconsin. (DbD Resp., Ex. F (listing DbD - Illinois as the "Seller," Julie Duffy as the "Shareholder," and DbD - Wisconsin as the "Buyer").) Therefore, we are concerned with whether this asset sale and the

contravention to § 1359. (DeLaurentis Mem. at 9.) We disagree.

In *Kramer v. Caribbean Mills*, 394 U.S. 823, 89 S. Ct. 1483 (1969), the Supreme Court held that § 1359 prohibited diversity jurisdiction when an assignor assigns a legal claim but retains an interest in that claim, the assignee had no previous connection to the assigned claim, and the assignment was made solely to create diversity jurisdiction. *Id.* at 827-28, 89 S. Ct. at 1487. *Kramer* explicitly stated that its holding did not affect "cases in which this Court has held that where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive." *Id.* at 828 n.9, 89 S. Ct. at 1490. This statement affirmatively included *Black & White Taxi Cab Co. v. Brown & Yellow Taxi Cab Co.*, 276 U.S. 518, 48 S. Ct. 404 (1928). *See Kramer*, 394 U.S. at 828 n.9, 89 S. Ct. at 1490 (citing *Black & White Taxi Cab*). In *Black & White Taxi*,[4] the Supreme Court concluded that a corporation's transfer of its assets to a newly created diverse corporation, followed by the dissolution of the former, non-diverse corporation, was not collusive and did not prohibit diversity jurisdiction under § 1332. 276 U.S.

---

conversion of DbDFI -Wisconsin's state of incorporation are collusive under § 1359. DeLaurentis's conclusory arguments that "money was drained out of" DbD - Illinois prior to the sale of its assets to DbD - Wisconsin in an attempt to create a judgment proof, shell corporation are inappropriate without citing any authority for those statements. (DeLaurentis Reply at 9.) Because the DbD Plaintiffs provided similar reasons for converting DbDFI - Illinois to a Wisconsin corporation as they have for establishing DbD - Wisconsin and transferring DbD - Illinois' assets to it, we consider the two actions jointly in determining whether diversity jurisdiction is prohibited by § 1359.

[4] Although *Black & White Taxi* preceded the enactment of § 1359, it interpreted one of § 1359's predecessor statutes, 26 U.S.C. § 80 (1940 ed.). *Black & White Taxi*, 276 U.S. at 524, 48 S. Ct. at 405 (citing 28 U.S.C. § 80); *see Kramer*, 394 U.S. at 826-27, 89 S. Ct. at 1489 (explaining that "decisions of [the Supreme Court] under the other predecessor statute, 28 U.S.C. § 80 (1940 ed.), seem squarely in point" in analyzing § 1359).

at 524, 48 S. Ct. at 405. It further instructed courts not to inquire into the motives of the parties where "[t]he succession and transfer were actual, not feigned or merely colorable." *Id.*

Since *Kramer*, some circuits have adopted a presumption that transfers and assignments between related entities are collusive. *See, e.g.*, *Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 643-44 (1st Cir. 1995) (applying an "elevated scrutiny to assignments between affiliated parties"); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991-92 (9th Cir. 1994) (adopting a presumption of collusion for assignments from a non-diverse subsidiary to a diverse parent corporation); *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir. 1976) (presuming collusion where non-diverse parent company assigns claims to a diverse subsidiary that "engaged in no business other than the prosecution of that claim"). This presumption of collusion can only be rebutted "by offering evidence that the transfer was made for a legitimate business purpose unconnected with the creation of diversity jurisdiction." *Prudential Oil Corp.*, 546 F.2d at 476. The Seventh Circuit, however, has explicitly rejected the adoption of such a presumption.[5] *Herzog*, 976 F.3d at 1067; *see also Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1314 (11th Cir. 2007) (adopting the reasoning of the Seventh Circuit and rejecting a presumption).

In rejecting a presumption of collusion for assignments or transfers between related parties, *Herzog* instructs courts to make a factual determination of whether the assignment was collusive, "in the relevant sense of being motivated by the assignor's desire to obtain access to a federal court under the diversity jurisdiction." *Herzog*, 976 F.2d at 1066. In *Herzog*, the

---

[5] Accordingly, DeLaurentis's attempted reliance on *Prudential Oil Corp.* and other similar cases applying the presumption of collusion (DeLaurentis Reply at 12-13) is misplaced.

plaintiff's non-diverse subsidiary assigned promissory notes issued by the defendant to the plaintiff. *Id.* The notes could only be collected by filing a lawsuit, and the assignment of the notes created diversity jurisdiction. *Id.* at 1066-67. The Seventh Circuit admitted that "the timing of the assignment in relation to the parties' dispute and to the law suit[] emit[ed] an odor of collusion." *Id.* at 1067. However, it recognized that the district judge "was not required – perhaps was not permitted – to disregard the sworn evidence to the contrary submitted by [the plaintiff] and not countered by any evidence submitted by [the defendant]." *Id.* The plaintiff had submitted affidavits stating that the assignment was not made to create diversity, "but to facilitate the provision of additional capital" to its subsidiary. *Id.* at 1066. The court doubted the true value of the assignment, but refused to apply an inference of collusion simply because the parties were under common ownership. *Id.* at 1066. It reasoned that "Congress could if it wanted adopt a rule forbidding the conferral of diversity jurisdiction by assignment to an affiliated corporation but it has not done so and we are given no urgent reason to try to do so in its place even to the extent of creating a soft rule, that is, a presumption." *Id.*

Under *Herzog*, we are convinced that jurisdiction is proper. The DbD Plaintiffs concede that one reason for the transfer of DbDFI - Illinois' state of incorporation and the creation of DbD - Wisconsin was to ensure diversity jurisdiction in a suit against DeLaurentis. (DbD Resp. at 6.) However, they also claim that there were other reasons for the transfer. For example, Patrick Duffy explains that the DbD Plaintiffs had physically moved to Wisconsin, were not conducting business in Illinois, and had intended to change their corporate status for some time. (DbD Resp., Ex. C, Patrick Duffy Decl. ¶¶ 20, 22.) Although we recognize that the Illinois companies had no ongoing business and their only assets were their rights under the Agreement

with DeLaurentis, we cannot disregard the sworn statements that they caused the incorporation of the companies in Wisconsin for reasons other than just the establishment of diversity jurisdiction. *See Herzog*, 976 F.2d at 1067.

We acknowledge that there are factually similar cases from other circuits that have adopted the opposite conclusion. *See Toste Farms*, 70 F.3d at 643-45 (holding that where the main asset transferred to a diverse corporation is the legal claim and the new corporation did not have any ongoing activities after the transfer, other than the pursuit of the legal claim, the transfer was made for collusive purposes and diversity jurisdiction was prohibited by § 1359); *Greater Dev. Co. of Conn., Inc. v. Amelung*, 471 F.2d 338, 338 (1973) (same). *But see Piermont Heights, Inc. v. Dorfman*, 820 F. Supp. 99, 100 (S.D.N.Y. 1993) (holding that the transfer of plaintiff's state of incorporation to a diverse state was not collusive); *Franco, Lewis & Co. v. Callahan*, No. 94 C 1027, 1994 WL 744304, at *15 (D.N.J. Aug. 22, 1994) (reasoning that "a company which abandons its residency and associated privileges in one state for another should not be restrained by a residency status it no longer enjoys"). Those cases applied a presumption of collusion in cases like this one, where transfers were made between related parties. *See, e.g., Toste Farms*, 70 F.3d at 643-44. Because the Seventh Circuit has rejected such a presumption, the reasoning in those cases is not directly applicable here. DeLaurentis has not offered any evidence to indicate that the DbD Plaintiffs' change in corporate status was undertaken solely to fabricate diversity jurisdiction, other than pointing to the suspicious timing and circumstances of the transfers. Under *Herzog*, that is insufficient to overcome the Dbd Plaintiffs' sworn statements. Because diversity jurisdiction is not prohibited by § 1359, we deny DeLaurentis's motion to dismiss.

**II. The DbD Plaintiffs' Motion for Reassignment as Related**

Local Rule 40.4 provides a mechanism for parties to request the reassignment of a later-filed case to a judge presiding over an earlier-filed, related case. L.R. 40.4. Typically, such a motion for reassignment is presented to the judge presiding over the lower-numbered case. *Id.* at 40.4©. However, where, as here, the lower-numbered case is assigned to a magistrate judge on the consent of the parties and the higher-numbered case is assigned to a district judge, the motion is presented to the district judge. *Id.* In order for us to grant a motion for reassignment, the movant must first demonstrate that one of the following conditions is satisfied: "(1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are the same." *Id.* at 40.4(a).

The DbD Plaintiffs move to reassign the case before us to Magistrate Judge Mason as related to the *DeLaurentis* action. (DbD Mot. at 2.) In *DeLaurentis*, Sharyn and Salvatore DeLaurentis, Jr. sued the Duffys for fraud, violation of the IDBPA, and rescission of contract. (DbD Mot., Ex. 1, *DeLaurentis* Compl.) Those claims arise from DeLaurentis's Agreement to purchase the assets of the Illinois companies. (*Id.*) In the case before us, the DbD Plaintiffs have sued DeLaurentis for breach of the same Agreement. (Compl. ¶¶ 22-27.) Although DeLaurentis attempts to argue that the conditions in L.R. 40.4(a) are not satisfied (DeLaurentis Resp. to DbD Plaintiff's Mot. for Reassignment at 6-7 (hereinafter DeLaurentis Resp.)), she admits that the earlier-filed "action arose from the same transaction" as the action before us (DeLaurentis Mem. at 2). Given that the actions in both cases arose from the same transaction – the Agreement – L.R. 40.4(a) has been met.

-10-

Before we can grant the motion for reassignment, however, the movant must also demonstrate that each of the criteria in L.R. 40.4(b) is met. L.R. 40.4(b) requires that:

> (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding.

L.R. 40.4(b). The first requirement is satisfied – both cases are pending in the Northern District of Illinois. The second criteria is also met. The disposition of both cases will require a court to consider the meaning of and the facts surrounding the Agreement. If one judge handles both cases, judicial resources will be saved. DeLaurentis's argument that this condition is not satisfied is not persuasive. First, her argument makes no mention of judicial efficiency. Instead, she argues that "[w]hen the Illinois corporation known as Dinner by Design, Inc. is designated as a plaintiff in this action, or a defendant in the action pending before Judge Mason, subject matter will be destroyed." (*Id.*) However, the DbD Plaintiffs are not attempting to add DbD - Illinois as a party to either action. Instead, they are attempting to reassign this case, which does not include DbD Illinois as a party, to Judge Mason. This reassignment would not consolidate the two cases into one. *Compare* Fed. R. Civ. P. 42 *with* L.R. 40.4. Furthermore, we agree with the DbD Plaintiffs that DeLaurentis is merely attempting to present further arguments in support of her motion to dismiss, which we have denied. Accordingly, the second requirement is satisfied.

The third requirement is also satisfied. Both cases are fairly recent cases, only having been filed in the last six months. Although Judge Mason has issued some rulings in the case pending before him, none of those rulings have been dispositive. Furthermore, neither case has progressed past the motion to dismiss stage, "no discovery has been conducted and little judicial

effort has been expended thus far." *Global Patent Holdings, LLC v. Green Bay Packers, Inc.*, No. 00 C 4623, 2008 WL 1848142, at * 4 (N.D. Ill. Apr. 23, 2008). Finally, we are satisfied that the fourth factor has also been met. The fourth factors require that "the cases [be] susceptible of disposition in a single proceeding." L.R. 40.4(b)(4). The DbD Plaintiffs argue that this factor is met and explain that had DeLaurentis sued them instead of the Duffys, the claims would have actually been compulsory counterclaims. (DbD Mot. ¶ 16.) However, the Plaintiffs argue that the case cannot be disposed of in a single proceeding because they will not consent to the jurisdiction of a magistrate judge in this case, which they contend is required. (DeLaurentis Resp. at 10.) We will address that argument further below. As an initial matter, we think that both cases are susceptible to disposition in a single proceeding. Both cases involve essentially the same parties, similar factual issues, and the same Agreement. Additionally, we think it is highly likely that the same witnesses will be called in both cases. Accordingly, it appears that the cases are susceptible to disposition in a single proceeding.

The crux of DeLaurentis's opposition to the DbD Plaintiffs' motion is that the earlier-filed case is before a magistrate judge on the consent of the parties and that, although she consented to have that case heard by Judge Mason, she has not and will not give consent for this case to be heard by Judge Mason. (DeLaurentis Resp. at 5-6.) Magistrate judges are authorized to "conduct any or all proceedings in a jury or nonjury civil matter" with "the consent of the parties" and when they have been "specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1); *see also* Fed. R. Civ. P. 73. Without such consent, a magistrate judge does not have full authority to issue dispositive orders, conduct trial, or enter final judgment. *See Roell v. Withrow*, 538 U.S. 580, 582-83, 123 S. Ct. 1696, 1699-1700 (2003)

(holding that such consent can be inferred); *Heft v. Moore*, 351 F.3d 278, 281 (7th Cir. 2003). Consent can only be vacated "when a party shows extraordinary circumstances." Fed. R. Civ. P. 73(b)(3); *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097 (7th Cir. 1987) (holding that allowing plaintiffs to amend their complaint to request $10,000,000 in punitive damages when the original complaint only sought $150,000 in punitive damages did not constitute extraordinary circumstances).

DeLaurentis argues that interpreting L.R. 40.4 to allow the reassignment of a case pending before a district judge to a magistrate judge presiding over a related case without the parties' consent is impermissible because it conflicts with 28 U.S.C. § 636. (DeLaurentis Resp. at 5 (citing Fed. R. Civ. P. 83 ("A local rule must be consistent with . . . federal statutes and rules.") and *United States v. Claros*, 17 F.3d 1041, 1044-45 (7th Cir. 1994) ("A local rule may not be inconsistent with the Constitution, a statute of the United States, or with a national rule governing the conduct of litigation in the United States courts.").) She further argues that the drafters of L.R. 40.4 recognized the limitations that § 636 places on magistrate judges, as demonstrated by the exception they created for filing a motion for reassignment before the district judge presiding over the later-filed case when the earlier-filed case is before a magistrate judge on consent. (DeLaurentis Resp. at 5-6.) We disagree with DeLaurentis's argument that this exception demonstrates the drafter's knowledge that reassigning a case as related to a magistrate judge without their consent is prohibited by statute. Instead, the fact that the drafters included such an exception regarding where to file a motion demonstrates that they considered this situation and decided not to prohibit such a reassignment in its entirety. We have found no case law and the parties have not presented any authority addressing whether reassignment of a

related case to a magistrate judge is inappropriate where the parties, although having consented in the earlier case, have not consented to the magistrate judge's jurisdiction for the later case. Because the two cases involve interpretation of the same Agreement and involve similar questions of fact and law, and the DbD Plaintiffs have satisfied L.R. 40.4's requirements for reassignment as related, we are convinced that judicial economy requires that they be decided by the same judge. Accordingly, the case is reassigned to Judge Mason.[6]

## CONCLUSION

For the reasons set forth above, we deny DeLaurentis's motion to dismiss and grant the DbD Plaintiffs' motion to reassign.

_____
Honorable Marvin E. Aspen
United States District Judge

Date: June 23, 2009

---

[6] We note that Judge Bucklo, the district judge assigned to the first-filed action, may decide, either "[o]n [her] own for good cause" or if DeLaurentis shows "extraordinary circumstances," to vacate the referral to Judge Mason. *See* Fed. R. Civ. P. 73(b)(3).